## Frank Kennon *v.* The State.

1. Confessions of Unwarned Prisoner.— The Code of Procedure, article 750, expressly inhibits proof of extrajudicial confessions by an unwarned prisoner unless, ʼin connection therewith, he stated facts or circumstances that are found to be true, and which conduce to establish his guilt. If the inculpatory circumstances disclosed by the prisoner are proved to be true, what he said in disclosing them is admissible against him for the purpose of explaining the disclosures themselves. But the truth of the inculpatory circumstances must be shown by evidence *aliunde* the statement of the prisoner.

2. Same — Case Stated.— In a trial for horse-theft the State was permitted, over objection by the defense, to prove that the defendant, while in legal custody and not warned that his statements might be used against him, said, in substance, that one S. got the animal at a certain locality and in the night, and brought it to him, the defendant, and that he took a bell from around its neck and rode it off. The State proved that the animal was taken in the night and from a locality corresponding with that described by the defendant, and that, when last seen before it was stolen, it had a bell around its neck; but, aside from the defendant's statement, there was no proof that he took the bell off the animal and rode it away. *Held* that, assuming that these latter circumstances would, if shown to be true, conduce to establish the guilt of the defendant, the disclosure of them by the defendant, while he was in custody and uncautioned, was not evidence against him; and their admission over his objection was error.

APPEAL from the District Court of Fayette. Tried below before the Hon. L. W. MOORE.

The conviction in this case was for theft of a mare, the property of Mrs. Collins. A term of twelve years in the penitentiary was the punishment assessed by the jury.

Mrs. Collins, for the State, testified that she lived near West Point, in Fayette county, Texas, and that her mare was taken from there, about July 31, 1881. The mare was taken in the night, and without witness's consent. The mare had been worked the preceding day, and at night was hobbled out with a piece of chain, and had on a bell. The next morning she was gone. About six or eight weeks afterwards she was brought back to witness by Mr. John Farquhar. Witness heard of the mare being in Austin county about ten days after she was missed. The information came from Mr. Lewis, the sheriff of Austin county. Witness did not know who took her mare, and could not say that she had ever seen the defendant prior to the trial. She stated that the mare was then in the town of La Grange, where the court was in session, and that several persons had recognized the animal that day.

This witness was recalled at a subsequent stage of the trial, and testified that the place where she lived and from which the mare was taken is three or four miles east of West Point, and near the intersection of the La Grange and West Point road by a road to Flatonia. She had never recovered the bell and chain which were on the mare when stolen.

John Farquhar, for the State, testified that he knew Mrs. Collins and the mare in question. He recovered the mare from J. B. Lewis, sheriff of Austin county, where the witness got the animal and brought it back to Mrs. Collins. The mare, while witness was testifying, was in the town of La Grange, and had been seen that day by J. B. Lewis and Burrell Garnett.

Burrell Garnett, for the State, testified that he identified the defendant as Frank Kennon, whom he had known for eighteen months or two years.  Early in August, 1881, witness met the defendant and Howard Stewart in Austin county.  Defendant was riding the same bay mare which witness had seen in possession of John Farquhar the day of the trial.  When witness met the defendant and Stewart, in Austin county, the latter was riding a sorrel horse, and witness bought the horse from Stewart. Witness asked the defendant if the sorrel horse was "good property," and remarked that he did not want to buy unless the title was good.  Defendant replied that he saw his brother trade the horse to Stewart, and that the latter's title was good; and at the same time the defendant offered to sell the mare he was riding to witness for twenty-five dollars.  Witness paid fifteen dollars to Stewart for the horse, and asked defendant a second time if Stewart's title to the horse was good, and defendant replied that it was so far as he knew.  In the evening of the same day sheriff Lewis of Austin county arrested both Stewart and the defendant, and the sorrel horse was taken from the witness.  The bay mare was taken from the defendant by Lewis.

J. B. Lewis, for the State, testified that he was the sheriff of Austin county.  He knew the defendant, and early in August, 1881, arrested him and Howard Stewart for the theft of a horse stolen in Gonzales county.  Witness found the horse in the possession of the preceding witness, Garnett.  When arrested by witness, the defendant had in his possession a mare which, as afterwards was ascertained, belonged to Mrs. Collins.  This mare the witness had seen in the town of La Grange the same day but before he was examined as a witness in this case.  When the arrests were made by witness he did not know who owned the mare nor where she came from; but he subsequently ascertained where she came from by means of statements made by defendant while in arrest for theft of

the sorrel horse found in Garnett's possession, but before he was arrested for theft of the mare. When defendant made the statements he had not been warned of the legal consequences, nor did witness subsequently warn him.

At this stage of the testimony the court retired the jury pending the further examination of the witness with a view to the admissibility of the statements made by the defendant to him; and at the conclusion of that inquiry the court excluded portions of the statements, and held others competent,— the defense reserving exceptions to the latter ruling.

The jury being recalled, the witness detailed to them the portion of defendant's statements allowed by the court, as follows:

"Defendant told me that he and Howard Stewart got the mare in the night-time, in Fayette county, at a place about four miles east of West Point, near where two roads cross. The name of the roads I have forgotten. That at the time of the taking, the mare was grazing near the road, and had on a chain and a bell; that Stewart went and caught the mare, and defendant stayed in the road; that Stewart caught the mare where she was grazing, and brought her to the defendant in the road. That the defendant took the bell and chain off of the mare and threw them away, and put his saddle on her, and rode her off, he and Stewart traveling together. That this was a few days before he was arrested by the witness. The defendant stated that he had not taken the mare, but that it was Howard Stewart who did so."

Proceeding with his own testimony the witness Lewis stated that the defendant's disclosures enabled him to locate the neighborhood from which the animal had been taken, and he wrote to the sheriff of Fayette county to ascertain whether any person living in that neighborhood had lost a mare, and through the sheriff of Fayette county the witness learned that Mrs. Collins had lost one.

He then wrote to Mrs. Collins, and after hearing from her he turned the mare over to Mr. John Farquhar.

The State having closed its proof, the defense introduced Sid Kennon, a brother of the accused. The witness stated that about the last of July or first of August, 1881, Howard Stewart came to a railroad wood-yard in Gonzales county at which the witness, the defendant, and several others were at work, and told the defendant that he, Stewart, wanted to hire him to go with him, Stewart, to Austin county. After some conversation Stewart agreed to pay the defendant seventy-five cents a day, and to furnish him a horse to ride during the time he should be gone. This was early in the morning. Stewart was riding a brown horse and leading a sorrel pony. As soon as defendant agreed to go he commenced getting ready, as Stewart said he was in a hurry to start. About dinner time they started off, the defendant having put his saddle on the sorrel pony which Stewart had been leading. The pony was furnished by Stewart for the defendant to ride, and the defendant went off riding it. Joe Davis, Tom Kennon, and perhaps Praidd and John Swabs were present, and must have heard the conversation and witnessed the facts stated. The defendant and Stewart both lived in Gonzales county at the time.

By the minutes of the court and the admissions of the prosecution, the defense showed that Howard Stewart, at the pending term of the court, had been convicted of the theft of the same mare involved in this case; that Stewart pleaded guilty to the indictment which charged him with the theft, and that the indictment against Stewart alleged the same ownership and the same time of the taking as does the indictment against the defendant.

*T. J. Paine,* for the appellant.

*H. Chilton,* Assistant Attorney General, and *T. H. Franklin,* district attorney, for the State.

HURT, J.    The appellant was convicted of the theft of a mare, the property of Mrs. Collins. A solution of one question will dispose of this appeal.

The appellant was in custody of the sheriff, and while thus in arrest, not being cautioned or warned as is required by law, made the following confession to J. B. Lewis: " Defendant told me that he and Stewart got the mare in the night-time, in Fayette county, at a place about four miles east of West Point, near where two roads cross; that, at the time of the taking, the mare was grazing and had on a piece of chain and a bell; that Stewart caught the mare when she was grazing and brought her to defendant in the road; that defendant took the bell and chain off of the mare and threw them away, and he put his saddle on her and rode her off, he and Stewart traveling together." Witness Lewis says, "that from the statement of defendant he was able to locate about the place from which the animal had been taken, and wrote to the sheriff.of Fayette county, . . . and through him found out that Mrs. Collins had lost one." Neither the chain nor bell was found. The defendant objected to this evidence because he was under arrest; the court overruled his objection, and he reserved his exceptions.

Defendant being under arrest, under the above state of facts, are these confessions admissible ? Article 750 of the Code of Criminal Procedure provides that " the confession shall not be used if, at the time it was made, the defendant was in jail or other place of confinement, nor while he is in custody of an officer, unless such confession be made in the voluntary statement of the accused, taken before an examining court in accordance with law; or be made voluntarily after having been first cautioned that it may be used against him; or unless, in connection with such confession, he make statement of facts or of circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen

property, or instrument with which he states the offense was committed."

This statute has been passed upon by our Supreme Court and Court of Appeals, and construed to admit only facts and circumstances found to be true which conduce to establish the prisoner's guilt, such as finding secreted or stolen property, etc.   When these results are reached by means of the confession, then the rule admits not only the fact that the stolen property had been traced by means of the information received from defendant, but the information or declaration itself.   "If the property was recovered by means of the information, then it would be admissible to prove not only that fact, but what was said by the prisoner in conveying the information."   But at the same time this would not let in other admissions, statements or declarations, if any such there were, not directly connected with or explanatory of such information.   This is the full extent to which the previous decisions have gone.   *Davis* v. *State*, 8 Texas Ct. App. 500; *Selvidge* v. *State*, 30 Texas, 60; *Warner* v. *State*, 29 Texas, 369; *Strait* v. *State*, 43 Texas, 486; *Speight* v. *State*, 1 Texas Ct. App. 551; *Berry* v. *State*, 4 Texas Ct. App. 492; *Zumwalt* v. *State*, 5 Texas Ct. App. 521.

From the above rules, we conclude that the facts or circumstances that are found to be true, which conduce to establish his guilt, are admissible, and that what was said in conveying the information of these facts (found to be true and conducing to guilt) is also admissible for the purpose, if connected therewith, of explaining the information, and not for any other purpose.   Here the fact that the mare was brought to defendant, where taken, is admissible for the purpose of explaining the fact that he took the chain and bell from her, and not for the purpose of proving that he took her, for the rule requires that the facts or circumstances "shall be found to be true," and unless found to be true, though admitted will be excluded.

We are proceeding upon the hypothesis that the chain and bell transaction was a fact found to be true and conduced to prove the guilt of defendant. No fact confessed by defendant, unless connected with or explanatory of this matter, is admissible, and the explanatory facts are admissible only for the purpose of elucidating the information given of the facts found to be true.

. To illustrate: Suppose that defendant confessed to the theft of the mare, this would not be admissible though proof that the mare was stolen be full and complete. Therefore when the main fact cannot be confessed, some fact tending to prove the main fact (which is the theft of the mare) must not only be confessed but must tend to identify the defendant as the thief. And the fact confessed must be found true by other evidence.

What fact confessed was found true by other evidence in this case? None whatever. It is true that the mare, when last seen, had on a chain and bell, but these facts do not prove that defendant took these articles from the mare. If defendant had stated that he concealed or placed these or either of these articles at a certain place, and they are found either upon or in pursuance of this information where they were said to be placed by defendant, the rule would have been complied with, and the facts would be admissible. This, however, was not the case. This question is thoroughly discussed in the cases above cited.

We are of the opinion that the court erred in admitting the confessions of the defendant, and that the judgment of the court must be reversed and the cause remanded.

*Reversed and remanded.*